# IN THE COURT OF APPEALS OF IOWA

No. 18-1908
Filed February 20, 2019

**IN THE INTEREST OF D.G.,**
**Minor Child,**

**C.B., Mother,**
     Appellant,

**B.A., Father,**
     Appellant.

_____

Appeal from the Iowa District Court for Jackson County, Phillip J. Tabor, District Associate Judge.

A mother and father separately appeal the termination of their parental rights to their child. **AFFIRMED ON BOTH APPEALS.**

Stuart G. Hoover of Blair & Fitzsimmons, P.C., Dubuque, for appellant mother.

Joshua J. Reicks of Schoenthaler, Bartelt, Kahler & Reicks, Maquoketa, for appellant father.

Thomas J. Miller, Attorney General, and Meredith Lamberti, Assistant Attorney General, for appellee State.

William Lansing, Dubuque, guardian ad litem for minor child.

Considered by Doyle, P.J., and Mullins and McDonald, JJ. Tabor, J., takes no part.

**MULLINS, Judge.**

A mother and father separately appeal the termination of their parental rights to their child, born in 2014. The mother argues termination of her rights is not in the child's best interests and the statutory exception to termination contained in Iowa Code section 232.116(3)(a) (2018) should be applied or a guardianship should be established with a maternal great-aunt. The father challenges the sufficiency of the evidence concerning the statutory ground for termination cited by the juvenile court, echoes the mother's claims concerning the statutory exception to termination and establishment of a guardianship, and argues he should have been granted an additional six months to work toward reunification.

## I.     Background Facts and Proceedings

The parents and child came to the attention of the Iowa Department of Human Services (DHS) in December 2016 as a result of the parents' substance abuse, mental health, and domestic violence. The mother, twenty-six years of age at the time of the termination hearing, has a history of methamphetamine use spanning roughly ten years. She is the mother to an older child not involved in these proceedings who is under the care and guardianship of a relative. The father, just under forty-five years of age at the time of the termination hearing, has a significant history of drug and alcohol abuse. He began consuming alcohol at the age of twelve, marijuana at the age of thirteen, and "about anything" around the time he turned eighteen. The father has five other children; his parental rights have been terminated as to other children.[1]

---

[1] The record is unclear whether the father's parental rights have been terminated as to some or all of his other children.

After the initiation of DHS involvement, the parents refused to submit to drug testing or allow the child to be subjected to the same. The parents initially declined to participate in voluntary services. After a child-in-need-of-assistance petition was filed, they agreed to a safety plan that would allow the child to be tested for drugs. However, the parents evaded testing of the child. When a test was finally administered, the child tested positive for methamphetamine, amphetamines, and marijuana. The child was removed from the parents' care in March 2017 and placed with his maternal great-aunt.

Through September 2018, at which time the parents were still only allowed fully-supervised visitation, the parents were generally non-compliant with drug-testing requests from DHS. Domestic violence continued to be an issue, with the mother continuously associating with an on-again, off-again boyfriend—who has substance-abuse issues of his own and also refuses to submit to drug testing— with several incidents of domestic violence resulting from the relationship. The boyfriend was arrested in relation to a domestic-violence incident with the mother roughly a month before the termination hearing in October 2018. The mother testified that as a result of this incident, she is no longer focused on having a relationship with this man. However, she did request that the no-contact order in relation to the incident be lifted. Neither parent meaningfully utilized domestic-violence services throughout the life of the case. The mother also failed to meaningfully participate in recommended mental-health services.

As to drug testing, the parents generally declined testing facilitated by DHS. Instead, the parents would submit to testing through Area Substance Abuse Council (ASAC), where they both underwent substance-abuse treatment for much

of the case, but concerns for the parents' continued substance abuse lingered throughout the case in light of the parents' refusal to submit to DHS-facilitated drug testing and the fact that ASAC allowed for unmonitored drug testing. Correspondence from an ASAC representative admitted into evidence indicates ASAC drug-test results are not something the court system should rely on in child-welfare cases, as the facility does "not follow a chain of command with the urine sample" and many of the tests are unmonitored.

The mother tested negative for drugs in early September 2018, but, despite being involved in substance-abuse treatment for some time, tested positive for methamphetamine later the same month. The mother testified this was her only drug use since February 2018. The juvenile court found this assertion to be not credible. The mother also failed to appear for two subsequently scheduled hair-stat tests in October. The father admitted to relapsing on methamphetamine shortly before the termination hearing in October.

The mother was generally consistent in attending visits with the child throughout the life of the case and was generally able to demonstrate her ability to parent the child during those visits. The father was generally inconsistent in attending visits, and he verbalized multiple times that the visits he did attend were for the purpose of making a good impression on the juvenile court.

The child has been placed in the same relative care with his great-aunt since removal, a placement in which he is thriving. The child refers to the great-aunt as "Mom," and the great-aunt is willing and able to adopt the child. One of the DHS workers testified to her opinion that the establishment of a guardianship in the great-aunt would be very confusing for the child. The great-aunt has made

it very clear that she has no interest in a guardianship arrangement. The record additionally indicates the guardianship arrangement concerning the mother's other child has not been a positive experience for the parties involved. The great-aunt has indicated a willingness to adopt the child upon termination of parental rights. It is undisputed the child shares a bond with the mother. The child's bond with the father is limited at best.

Following a hearing, the juvenile court terminated both parents' parental rights pursuant to Iowa Code section 232.116(1)(h). Both parents appeal.

## II.    Standard of Review

Appellate review of termination-of-parental-rights proceedings is de novo. *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018). "We are not bound by the juvenile court's findings of fact, but we do give them weight, especially in assessing the credibility of witnesses." *Id.* (quoting *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014)). Our primary consideration is the best interests of the child. *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006).

## III.    Analysis

### A.    Sufficiency of the Evidence

The father challenges the sufficiency of the evidence to support termination under Iowa Code section 232.116(1)(h).[2] The father only expressly challenges the State's establishment of the final element of that provision—that the child could not

---

[2] The mother does not specifically challenge the sufficiency of the evidence as to section 232.116(1); she only challenges the sufficiency of the evidence that termination is in the best interests of the child under section 232.116(2). Thus, we need not consider the sufficiency of the evidence under subsection (1) as to the mother. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010).

be returned to his care at the time of the termination hearing. *See* Iowa Code § 232.116(1)(h)(4) (requiring "clear and convincing evidence that the child cannot be returned to the custody of the child's parents . . . at the present time"); *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010) (interpreting the statutory language "at the present time" to mean "at the time of the termination hearing"). A de novo review of the record reveals the following pertinent facts. The father's visitation with the child was inconsistent throughout the life of the case, his visitation with the child waned even more in the months leading up to the termination hearing, the father has a significant history of substance abuse, and he relapsed on methamphetamine shortly before the termination hearing. Further, at the termination hearing, the father essentially conceded the child could not be returned to his care at the time, noting he might be a "viable option" for placement if "given more time." We conclude the challenged element was established by clear and convincing evidence, and we affirm the juvenile court's finding of the same.

B.      Best Interests of the Child

The mother argues termination is not in the best interests of the child.[3] In determining whether termination is in the best interests of a child, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2).

---

[3] Likewise, the father does not argue termination is not in the best interests of the child. Although we need not address best-interests as to the father, *see P.L.*, 778 N.W.2d at 40, our reasoning as to the mother is equally applicable to the father.

The mother points to her efforts at remedying her substance-abuse issues and argues she is capable of parenting the child. We agree that the mother is capable of parenting the child, but we note this ability is limited to times when she has her substance abuse in check. We also acknowledge that relapse is often times a part of recovery. That being said, the mother has been involved with methamphetamine for a period spanning roughly ten years. A life of substance abuse is all this mother knows and, as was the juvenile court, we are unconvinced she stayed as clean during these proceedings as she alleges.

"We hold no crystal ball, and to some extent, the [best-interests] determination must be made based upon past conduct." *In re M.M.*, No. 16-1685, 2016 WL 7395788, at *4 (Iowa Ct. App. Dec. 21, 2016). While we hope the mother prevails in her battle with substance abuse, "we cannot deprive a child of permanency after the State has proved a ground for termination" upon such sentiments. *See In re A.B.*, 815 N.W.2d 764, 777 (Iowa 2012). The mother has had ample time to get her substance abuse in check, and her relapse the month before the termination hearing shows she has been unable to do so. This child needs permanency and stability now. *See id.* at 778 ("It is simply not in the best interests of children to continue to keep them in temporary foster homes while the natural parents get their lives together." (quoting *In re C.K.*, 558 N.W.2d 170, 175 (Iowa 1997))).

Further, the child has been in the same relative placement since removal. The child is integrated into this home, he is thriving, and the relative is prepared to adopt the child and provide continued stability and permanency. Continued stability and permanency in this home are in this child's best interests. *See* Iowa

Code § 232.116(2)(b); *cf. In re M.W.*, 876 N.W.2d 212, 224–25 (2016) (concluding termination was in best interests of children where children were well-adjusted to home with their foster parents, the foster parents were "able to provide for their physical, emotional, and financial needs," and the foster parents were prepared to adopt the children).

We find termination of the mother's parental rights is in the child's best interests.

C.      Statutory Exception

Both parents argue the statutory exception to termination contained in Iowa Code section 232.116(3)(a) should be applied to preclude termination. "The court need not terminate the relationship between the parent and child if the court finds . . . [a] relative has legal custody of the child." Iowa Code § 232.116(3)(a). The application of the statutory exceptions to termination is "permissive not mandatory." *M.W.* 876 N.W.2d at 225 (quoting *A.M.*, 843 N.W.2d at 113). The juvenile court considered the application of this exception and, in consideration of the best interests of the child, decided against its application. Upon our de novo review of the record, we agree with the juvenile court and affirm its decision.

D.      Guardianship

Both parents argue the juvenile court should have forgone termination and instead established a guardianship of the child in the great-aunt. Simply stated, "a guardianship is not a legally preferable alternative to termination." *A.S.*, 906

N.W.2d at 477 (quoting *In re B.T.*, 894 N.W.2d 29, 32 (Iowa Ct. App. 2017)).[4] The juvenile court expressly concluded "it is clear that the maternal great-aunt . . . is meeting the needs of the child and that permanency in this matter demands permanency and not guardianship . . . . The dysfunction in this family would make a guardianship in this matter a disaster." Upon our de novo review, we agree. Specifically, a guardianship in the great-aunt would be very confusing for the child and the aunt has made it very clear that she has no interest in a guardianship arrangement. The record additionally indicates the guardianship arrangement concerning the mother's other child has not been a positive experience for the parties involved. We have already determined termination of the parents' rights is in the child's best interests. We further find that termination of parental rights will provide this child with a better sense of stability and permanency than would the establishment of a guardianship as proposed by the parents. We affirm the juvenile court's rejection of a guardianship with the great-aunt.

E.    Extension

Finally, the father requests an additional six months to work toward reunification. If, following a termination hearing, the court does not terminate parental rights but finds there is clear and convincing evidence that the child is a child in need of assistance, the court may enter an order in accordance with section 232.104(2)(b). Iowa Code § 232.117(5). Section 232.104(2)(b) affords the juvenile court the option to continue placement of a child for an additional six

---

[4] Both parents cite *B.T.* in support of their arguments that a guardianship should be established. We note the circumstances in *B.T.* and the circumstances in this case are markedly different.

months if the court finds "the need for removal . . . will no longer exist at the end of the additional six-month period."

The juvenile court was unable to make such a finding, concluding the child could not be returned to either parent "any time in the foreseeable future." Upon our de novo review of the record, we are also unable to affirmatively conclude a need for removal would no longer exist after a six-month extension.

> There are a number of stern realities faced by a juvenile judge in any case of this kind. Among the most important is the relentless passage of precious time. The crucial days of childhood cannot be suspended while parents experiment with ways to face up to their own problems. Neither will childhood await the wanderings of judicial process. The child will continue to grow, either in bad or unsettled conditions or in the improved and permanent shelter which ideally, at least, follows the conclusion of a juvenile proceeding.
> The law nevertheless demands a full measure of patience with troubled parents who attempt to remedy a lack of parenting skills. In view of this required patience, certain steps are prescribed when termination of the parent-child relationship is undertaken under Iowa Code chapter 232. But, beyond the parameters of chapter 232, patience with parents can soon translate into intolerable hardship for their children.

In re A.C., 415 N.W.2d 609, 613 (Iowa 1987). The same reasoning controls the father's request for an extension. We agree with the juvenile court that an extension of time is unwarranted.

## IV.    Conclusion

We affirm the termination of both parents' parental rights.

**AFFIRMED ON BOTH APPEALS.**